(578 P.2d 1131)
No. 49,132

WARREN G. SANDERS, EVELYN SANDERS, and FRED A. ENGLAND, *Appellees,* v. PARK TOWNE, LTD., a Nebraska Corporation, *et al., Appellants.*

Petition for review denied July 14, 1978.

Opinion filed May 19, 1978.

*David A. Welte,* of Shapiro, Polsinelli, Schulte, Wehrman and Welte, of Kansas City, Missouri, and *Lee H. McMaster,* of McMaster and Smith, of Wichita, for the appellant, Joe Pace.

*Gerald D. Lasswell* and *Dale B. Stinson, Jr.,* of Stinson, Wisdom and Lasswell, of Wichita, and *Ronald K. Badger,* of Wichita, for the appellants, Carlsberg Mobile Home Properties, Ltd.—'72, Richard A. Phillips, Lawyers Title Insurance Corporation, and Guarantee Title Company, Inc.

*Robert Martin* and *Lee Thompson,* of Martin, Pringle, Schell and Fair, of Wichita, for the appellees.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

FOTH, C.J.: In 1972 plaintiffs Sanders and England sold their mobile home park in Wichita, taking back a second mortgage of almost $200,000.00 as part of the $1,000,000.00 purchase price. The other $800,000.00 was paid by $200,000.00 in cash and assumption of a $600,000.00 first mortgage. As a result of participating in the purchaser's refinancing of the project in 1973, during which they released their original second mortgage in exchange for a replacement, plaintiffs found that the property had passed to a bona fide purchaser free and clear of their lien.[1] When the original purchaser-mortgagor defaulted and turned out to be insolvent they brought this suit for damages for fraud and breach of fiduciary duty, and to impress a lien on the property, against all who participated in the refinancing.

The original sale, from plaintiffs to Park Towne, Ltd., a Nebraska corporation, was closed on December 28, 1972. Unbeknownst to plaintiffs, Park Towne had already agreed to sell the park to a California limited partnership, Carlsberg Mobile Home Properties, Ltd.—'72, and in fact had delivered a deed to Carlsberg on December 13. Carlsberg's business was to hold investment property providing tax shelters for its public investors. This mobile home park was one of around six Carlsberg acquired from Park Towne at about the same time.

Park Towne had expressed to plaintiffs its intention to refinance the outstanding first mortgage, and stated that such refinancing would be easier if plaintiffs' second mortgage were not recorded. Because refinancing would relieve them of personal liability on the first mortgage plaintiffs withheld recording their mortgage, but when the refinancing was not promptly accomplished they recorded on February 12, 1973.

In the meantime, immediately after Park Towne acquired title from plaintiffs on December 29, Park Towne's deed to Carlsberg had been recorded, along with a mortgage back from Carlsberg to Park Towne. This was an all-inclusive mortgage of more than $1,000,000.00, designed to cover and insure payment of all prior obligations, and is referred to as a "wrap-around" mortgage. As

---

1. Although the lien may initially have been lost because the original second mortgage wasn't recorded until after the purchaser first conveyed the property, plaintiffs' participation in the refinancing scheme was necessary, and reinstituting a valid second mortgage position was their price for participation.

part of this transaction the Wichita park was leased back to Park Towne under an operating agreement, with Park Towne's interest in the wrap-around mortgage reassigned to Carlsberg to insure performance under the operating agreement.

The refinancing finally took place in late May and early June, 1973. It was accomplished by the following documents, listed in order of their recording:

a. Carlsberg deeded the property back to Park Towne.

b. Plaintiffs released their "second mortgage."

c. Park Towne gave a first mortgage to the new lender.

d. Park Towne redeeded the property to Carlsberg.

e. Park Towne released Carlsberg's original wrap-around mortgage.

f. Carlsberg executed a new wrap-around mortgage to Park Towne.

g. Plaintiffs' mortgage was filed.

h. An agreement was filed whereby ostensibly Park Towne's second wrap-around mortgage from Carlsberg was subordinated to the plaintiffs' new mortgage.

As may be seen, this series of transactions gave Carlsberg title clear of plaintiffs' mortgage unless it had actual notice of plaintiff's interest. The trial court found the evidence insufficient to establish such actual notice.

The defendant Richard A. Phillips was the agent of the defendants' Lawyers Title Insurance Corporation and its wholly owned subsidiary, defendant Guarantee Title Company, Inc. Phillips, on behalf of his principals, handled both the first sale and the refinancing. He acted as escrow agent, conceived the refinancing scheme, and recorded the various documents. At his instance plaintiffs' attorney prepared and returned to him the new second mortgage and the subordination agreement. He was committed to Park Towne and Carlsberg to issue title policies showing no more than two mortgages—the first mortgage and the wrap-around. He had been told by Park Towne that S.E.C. regulations prohibited Carlsberg from investing in property encumbered by more. He knew that plaintiffs were seeking a second mortgage position, and had assured them he would protect their interests. He also knew that the recording sequence he selected would not give plaintiffs the second mortgage position they sought, and in fact doubted that it would give them a lien at all. The trial court found that he could not fulfill all the commitments

he had made to the parties. In fact, he issued title policies which omitted plaintiffs' interest.

While this action was pending Park Towne and Carlsberg compromised a separate suit between them arising in part out of Park Towne's default on its operating agreement. As part of the compromise Park Towne released the wrap-around mortgage to it from Carlsberg, and Carlsberg released the personal liability to it of the defendant Joe Pace, president of Park Towne.

The trial court heard the case without a jury and entered judgment against the defendants in three parts:

1. For actual damages in the amount of $232,981.28 (the unpaid balance of the mortgage notes with prejudgment interest at the contract rate) against:

(a) Park Towne, Ltd., the corporate purchaser; .

(b) Joe Pace, its president;

(c) The two title companies;

(d) Richard A. Phillips, agent of the title companies.

2. For $100,000.00 punitive damages, against Phillips and the title companies, and against Park Towne.

3. It decreed a lien on the property in the hands of Carlsberg Mobile Home Property, Ltd.—'72, to secure the judgment for actual damages.

The court also decreed that the judgment for actual damages should bear interest at 10%, the rate called for by the mortgage notes.

All defendants against whom the above judgments were rendered have appealed (although Park Towne has filed no brief and may be defunct). Collectively the appellants raise seven points on appeal.

1. Phillips and the title companies contend that the trial court erred in finding that Phillips breached a fiduciary duty owed to the plaintiffs. We think the duty arose because, as escrow agent, he was the agent of the plaintiffs. "There is a respectable line of authorities in this jurisdiction to the effect that the depositary of an escrow is the agent of both the parties thereto. (*Davis v. Clark,* 58 Kan. 100, 48 Pac. 563; *Gault v. Hurd,* 103 Kan. 51, 172 Pac. 1011; *Smith v. Griffith,* 105 Kan. 357, 184 Pac. 725; *Southern v. Linville,* 139 Kan. 850, 33 P.2d 123; and *Southern v. Chase State Bank,* 144 Kan. 472, 477, 61 P.2d 1340, 107 A.L.R. 944; and see *Moe v. Transamerica Title Ins. Co.,* [21 Cal. App. 3d 289, 98 Cal.

Rptr. 547].)" *Ford v. Guarantee Abstract & Title Co.,* 220 Kan. 244, 259-60, 553 P.2d 254 (1976).

It is well settled that "the relation existing between a principal and agent is a fiduciary one demanding conditions of trust and confidence." *Merchant v. Foreman,* 182 Kan. 550, Syl. 2, 322 P.2d 740 (1958). See, also, *Kline v. Orebaugh,* 214 Kan. 207, 210, 519 P.2d 691 (1974) and *Wolcott & Lincoln, Inc. v. Butler,* 155 Kan. 105, Syl. 1, 122 P.2d 720 (1942). "[I]n all transactions concerning and affecting the subject matter of his agency, it is the duty of the agent to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal . . . ." *Merchant v. Foreman,* supra at 556. The agent must give the principal the benefit of all his knowledge and skill and cannot withhold or conceal information from the principal. *Ibid.*

In this case Phillips acted as the closing agent for all the parties in both the first and second series of transactions. He received payments for recording fees and disbursed monies received to all parties. He knew that the plaintiffs wanted a second mortgage and he assured them that he would protect their interest. (While this assurance was given at the time of the first transaction, there is no evidence that Phillips ever withdrew his assurance.) The plaintiffs' attorney sent the documents to Phillips with only the general instruction to see that they be recorded. Finally, Phillips sent plaintiffs a closing letter stating that he hoped he had handled the matter to their satisfaction. It was reasonable for the court to infer that Phillips was acting as plaintiffs' agent, and as such owed them a fiduciary duty.

Phillips attempts to narrow the scope of his duty by arguing that he was required only to file the documents prepared by plaintiffs' attorney, and thus did not breach his duty. This, however, is contrary to the evidence recited above, which was accepted by the trial court. Also, it ignores the fact that Phillips, not plaintiffs' attorney, decided what documents would be filed, directed their preparation and decided the order of filing. The subordination agreement, which he now says was surplusage, was prepared at his suggestion. His excuse, that he assumed plaintiffs' attorney had some secret knowledge or understanding which would protect plaintiffs' second mortgage position, was rejected by the trial court as "incredible." If he made such an assumption, good faith would dictate at least an inquiry.

When Phillips undertook to act for all parties he undertook to do so impartially. His choice of recording sequence favored the other defendants at the expense of the plaintiffs. If his position on appeal were upheld it would mean that an escrow agent could assume an adversary position with respect to one of his principals without disclosing that intention. Such conduct cannot be justified.

The trial court's finding that Phillips breached his fiduciary duty is adequately supported.

2. Phillips and the title companies argue as a separate point that certain interlineations Phillips made in the subordination agreement did not have an adverse effect on plaintiffs' rights. These interlineations were to redate the agreement from May to June—a time after the second wrap-around mortgage was recorded—and to make specific reference to the second wrap-around mortgage in the text of the agreement. They say that these were harmless changes, since the first wrap-around had been released, and the second was all the agreement could have referred to.

Plaintiffs argue that the agreement was prepared with the idea that the first wrap-around would remain of record, and that the agreement would have been effective as drafted to subordinate the first wrap-around to their mortgage once Park Towne was revested with title. This was the view taken by the trial court.

We need not resolve this issue. Regardless of the interlineations, the sequence of recording was enough to destroy plaintiffs' second mortgage position. The interlineations, made without consulting the scrivener who had entrusted the document to him, at least indicated Phillips' general attitude toward those who had employed him.

3. Phillips and the title companies argue that the trial court erred in awarding punitive damages, or alternatively that the amount awarded was excessive. Their basic claim is that Phillips breached no duty, an argument previously discussed.

Our court has stated that punitive damages "are permitted whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy. (*Malone v. Murphy*, 2 Kan. 250; *Albert Wiley v. Keokuk*, 6 Kan. 94; and *Cady v. Case*, 45 Kan. 733, 26 Pac. 448.) Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way

of punishing the wrongdoer for malicious, vindictive or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs. (*Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912; see, also, *Townsend v. Seefeld,* 102 Kan. 302, 169 Pac. 1157; and 15 Am. Jur., Damages, § 266, p. 700.)" *Watkins v. Layton,* 182 Kan. 702, 705, 324 P.2d 130 (1958). In determining the amount of punitive damages, the trier of fact may consider "the nature, extent and enormity of the wrong, the intent of the party committing it and generally all the circumstances attending the particular transaction, together with any mitigating circumstances tending to reduce the verdict or wholly defeating the damages." *Sweaney v. United Loan & Finance Co.,* 205 Kan. 66, Syl. 7, 468 P.2d 124 (1970). The trier may also take into account the "probable expenses of litigation, including attorney's fees . . . where such expenses are not stated to be matters which must be made a basis of compensation." *Brewer v. Home-Stake Production Co.,* 200 Kan. 96, Syl. 2, 434 P.2d 828 (1967).

In this case, as previously noted, there was evidence that Phillips knew the plaintiffs were to retain a second mortgage, that he developed and carried out the recording scheme, and that he knew the procedure followed would not protect the plaintiffs. This clearly supports the trial court's finding that Phillips acted with "reckless and willful disregard of the rights of the Plaintiffs." Considering the "enormity of the wrong" and the importance of deterrence, we cannot say that the award of $100,000.00 was excessive.

4. Carlsberg urges that the court erred in imposing a lien on the property to secure the payment of the judgment against the other defendants. The company points out that the court refused to find that it had actual notice of plaintiffs' interest prior to purchase of the property. A finding of constructive notice might have been made, but was not, based on the trial court's finding that plaintiffs were in actual possession until after Carlsberg purchased the property. Such a conclusion would have been inconsistent with the judgment against the other defendants, since they are liable only if their actions made it possible for Carlsberg to take title free of plaintiffs' interest.

The trial court appears to have found that Carlsberg was a bona fide purchaser, but had some duty to the plaintiffs because it had

knowledge of plaintiffs' mortgage and the subordination agreement before it negotiated the settlement of its affairs with Park Towne. The court concluded that the subordination agreement should be considered an equitable assignment to the plaintiffs of the note and mortgage from Carlsberg to Park Towne. If the subordination agreement was an assignment, Park Towne had no power to release the mortgage and note. See, *Insurance Co. v. Huntington,* 57 Kan. 744, 747-748, 48 Pac. 19 (1897). By this process the court reached the conclusion that the land in Carlsberg's hands can be subjected to plaintiffs' lien.

The problem with this result is that it amounts to holding land in the hands of a bona fide purchaser subject to an unrecorded mortgage. Neither plaintiffs nor the trial court offer us any authority for such a result, and we are unable to find any. Neither do we find any authority for saying that an agreement subordinating the lien of one mortgage to that of another amounts to an assignment of the first mortgage. Giving full effect to the subordination agreement would merely put plaintiffs' lien—if any—ahead of the wrap-around mortgage. It could not operate to create a lien if there was none.

As we see it, plaintiffs' cause of action against the other defendants is predicated on the proposition that through their machinations plaintiffs lost their lien. A finding that they didn't lose it at all seems inconsistent with their other claims and with the judgment rendered against the other defendants. We have concluded that this part of the judgment cannot stand.

5. Phillips and the title companies contend that the trial court erred by allowing prejudgment interest on the unpaid balances of plaintiffs' notes as an element of damages. They argue that this violates the general rule against prejudgment interest on unliquidated tort claims. See, *e.g., Foster v. City of Augusta,* 174 Kan. 324, Syl. 6, 256 P.2d 121 (1953); *Grindley v. Woods,* 129 Kan. 269, 270-71, 282 Pac. 573 (1929). Here, however, the interest on the notes was part of the actual damages suffered by the plaintiffs. Although the court did not make findings regarding the value of the property and the amount outstanding on the first mortgage, it apparently concluded that a valid second mortgage would have fully secured the amount due on the notes plus interest. Where interest is part of the actual loss it is recoverable. See, *Johnson v. Oil Well Supply Co.,* 85 Kan. 507, 117 Pac. 1022 (1911), where, in

an action for conversion of property covered by a chattel mortgage executed to secure a note, the court held that the amount due at the time the judgment was rendered was the face value of the note plus the contract rate of interest. And, *cf., Lightcap v. Mobile Oil Corporation,* 221 Kan. 448, 562 P.2d 1 (1977); *Gray v. Amoco Production Co.,* 223 Kan. 441, 573 P.2d 1080 (1978); *Shutts, Executor v. Phillips Petroleum Co.,* 222 Kan. 527, 559, 567 P.2d 1292 (1977).

6. Phillips and the title companies contend that the court erred by allowing post-judgment interest at the rate specified on the notes rather than the statutory rate of 8%. They point out that the cause of action against them was not based on contract and argue that the general statute on post-judgment interest should apply. See, K.S.A. 16-204 and K.S.A. 1977 Supp. 16-205.

Plaintiffs concede the general principle that in actions based on fraud, post-judgment interest is usually computed at the statutory rate, but argue that in rare cases where the conduct is willful or wanton, the higher contract rate is appropriate. They cite as authority for allowing the contract rate here a statement from 37 Am. Jur. 2d, *Fraud and Deceit,* § 382, that "in relatively rare instances involving unusual factual situations, the view has been taken that the rate of interest fixed in a contract involved in [an action based on fraud], rather than the statutory legal rate, is to be employed in computing the interest recoverable."

The authority cited does not support the application urged here, since both of the cases cited by the encyclopedist deal with the recovery of interest as part of the damage plaintiff suffered, not with post-judgment interest. See, *Empire Life Ins. Co. v. Beaumont Land and Building Co.,* 146 S.W. 335 (Texas Civ. App. 1912), and *Sykes v. Insurance Co.,* 148 N.C. 13, 61 S.E. 610 (1908). We are holding such prejudgment interest allowable here under point 5 above.

We conclude that Phillips and the title companies, who were not parties to the contract, are liable for post-judgment interest at the statutory rate of 8% under K.S.A. 16-204.

7. The final point is raised by Joe Pace, president of Park Towne, against whom the court rendered judgment for more than $200,000.00 in actual damages. Pace challenges the sufficiency of the evidence against him.

The plaintiffs concede that the evidence is insufficient to show

Pace participated in the series of transactions whereby Carlsberg took title free of plaintiffs' interest in the property. The evidence is that these were engineered by Phillips and Park Towne's vice-president, Loren Parkinson, against whom no judgment was rendered. The plaintiffs contend, however, that Pace is liable to them because he participated in Park Towne's release of Carlsberg's note and second wrap-around mortgage. They argue that since the court gave the subordination agreement the effect of an equitable assignment of the note and mortgage, Pace committed a fraud when he released them.

Our finding that there was no such assignment would remove that basis of liability. In addition, a reading of the court's memorandum and the journal entry indicates that Pace's liability was founded solely on the court's finding that he participated in the recording arrangements.

In its findings of fact the court stated:

"The Court concludes that the actions of Phillips from 8:00 a.m. on the 23rd of May, 1973, until June 5, 1973, cast a serious cloud on the validity of the Plaintiffs' second mortgage. The Court concludes that this was the active cooperation and solicitation of Joe Pace, Loren Parkinson and Park Towne, Ltd., and was done on behalf of his principals, Guaranty and Lawyers Title Insurance Companies."

In the journal entry the court awarded actual damages against Park Towne, Pace, Phillips, and the title companies. Those defendants, according to the court, all participated in the filing of the title instruments. Carlsberg's liability, which is based on participating in the release, is treated entirely separately by the court. It is discussed in separate paragraphs of the findings, conclusions, and journal entry. Also, no damages are awarded against Carlsberg, but only a lien on its property. Even if Pace's participation in this transaction was wrongful, under the trial court's theory it resulted in no damage.

It appears that the trial court based Pace's monetary liability solely on the finding quoted above that he participated in the recording scheme. Since the evidence is concededly insufficient to support this finding, this part of the judgment cannot stand.

In summary, we affirm the judgment for actual and punitive damages except (1) as against Phillips and the title companies it shall bear post-judgment interest at the statutory rate of 8%; and (2) as to the defendant Joe Pace the judgment is reversed. The judgment against Carlsberg imposing a lien on its property is also reversed.