**David E. HOXENG, d/b/a ADX Communications, Plaintiff,**

**v.**

**TOPEKA BROADCOMM, INC., et al., Defendants.**

**No. 94–2284–KHV.**

United States District Court,
D. Kansas.

June 20, 1995.

Timothy H. Girard, Grant M. Glenn, Bruce J. Woner, Woner, Glenn, Reeder, Lowry & Girard, Topeka, KS, for David E. Hoxeng.

Marta Fisher Linenberger, Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Topeka Broadcomm, Inc.

Charles A. Getto, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for Recoll Management Corp.

Martha A. Peterson, Myron L. Listrom, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Twenty First Century Broadcasting Inc., Dr. Marvin Wilson.

*MEMORANDUM AND ORDER*

VRATIL, District Judge.

This matter comes before the Court on *Plaintiff's Motion for Partial Summary Judgment* (Doc. # 135), filed May 1, 1995, and *Defendant Recoll Management Corporation's Motion for Summary Judgment* (Doc. # 126), filed May 1, 1995. Plaintiff David E. Hoxeng, d/b/a ADX Communications, claims that he had a contract with defendant Topeka Broadcomm, Inc. ("TBI") to buy KTPK Radio in Topeka, Kansas ("KTPK"), and that defendants RECOLL Management Corp. ("Recoll") and Dr. Marvin Wilson, M.D., tortiously interfered with that contract. On June 16, 1995, the Court held a status conference at which counsel presented arguments on the motions for summary judgment filed in this case. The Court overruled all motions, except as to two issues: (1) plaintiff's assertion that TBI had entered into a binding contract to sell the station, and (2) RECOLL's contention that even if a contract existed between plaintiff and TBI, it was illusory and therefore unenforceable as a matter of law. After further research and evaluation of these issues, the Court concludes that summary judgment is inappropriate.

On July 30, 1993, plaintiff, a resident of Texas, sent TBI's broker a letter of intent to purchase KTPK. The letter provided the material terms of an agreement, including a purchase price in the amount of $1,500,000. The letter required TBI to warrant that it had power and authority to bind the licensee of the station to sell the station and its assets under terms contained in the letter, including delivery of station assets free and clear of liens and encumbrances and no material adverse change in the assets, condition or business of the station between the date of the letter of intent and the date of closing. Within 10 business days after execution of the letter of intent, TBI was required to provide plaintiff access to the station's legal documentation, technical information and facilities. Plaintiff had 21 business days thereafter to complete a preliminary due diligence examination. If plaintiff for any reason in his sole determination was not satisfied with the preliminary examination, he had no fur-

ther obligation. The letter required plaintiff to pay $25,000, as evidence of his good faith interest in purchasing the station. If the letter was not accepted or if a formal contract was not agreed to, however, the deposit was to be returned to plaintiff without any obligation on his part. The letter contemplated that the parties would execute a formal contract after successful completion of due diligence.

On August 19, 1993, TBI faxed to Hoxeng a letter dated August 18, 1993, which indicated that subject to certain terms, TBI was willing to accept the proposal set forth by plaintiff. TBI stated that it would cooperate and wanted to proceed with plaintiff's due diligence request. TBI further stated that it was unable to give the financial representations and warranties without RECOLL, but that an agreement existed between TBI and RECOLL to proceed in good faith to sell the station, and it was TBI's understanding that the proposed purchase price was acceptable to RECOLL. At the bottom of the letter was an unsigned signature line for approval by RECOLL.

On the evening of August 19, 1993, plaintiff telephoned TBI and left a message that TBI's letter was acceptable to plaintiff, and that plaintiff was coming to Kansas to perform due diligence. Plaintiff contends that TBI's letter constitutes an offer consisting of the terms of plaintiff's letter of intent, as modified by TBI's letter. Plaintiff further contends that his telephone call to TBI constitutes an acceptance of TBI's offer. There is some question as to whether Texas or Kansas law applies to the formation and construction of the alleged contract. For purposes of these summary judgment motions, however, the parties agree that Texas law and Kansas law are not materially different. The Court will therefore draw from the law of both states in making its ruling.

As to plaintiff's assertion that he had a binding contract with TBI, the Court finds that the alleged agreement is ambiguous as to what role RECOLL would play in the alleged transaction. Specifically, TBI's letter is subject to three reasonable interpretations with respect to RECOLL's role. First, because TBI warrants under the letter of intent

that it has full power and authority to bind the licensee of the station to sell the station and its assets, the purported contract can be understood to warrant that TBI will deliver the station assets free of liens and encumbrances, and that to that end, TBI will procure a lien release from RECOLL. Alternatively, TBI's letter can reasonably be read as indicating that TBI does not intend to enter into a binding agreement unless and until RECOLL approves the sale by entering into a three-way contract to that effect with plaintiff and TBI. Under this interpretation, contract formation depends on whether RECOLL approved the sale, which is a factual issue on this record. Finally, TBI's letter can also be interpreted to mean that TBI intended to enter into a two-way agreement with plaintiff, conditioned on subsequent approval by RECOLL. Because natural and reasonable interpretations of the language in TBI's letter convey conflicting meanings as to the extent of RECOLL's participation in the transaction, the Court finds that the alleged contract is in this respect ambiguous. *See Simon v. National Farmers Organization, Inc.,* 250 Kan. 676, 680, 829 P.2d 884 (1992). Thus, plaintiff has not shown that he is entitled to summary judgment as to the existence of a contract.

The alleged contract also is ambiguous as to whether it creates mutual obligations on behalf of both parties. At one point the letter of intent appears to stipulate that plaintiff can walk away from the deal with no obligation if—but only if—the preliminary investigation is not to his satisfaction. The letter also provides more broadly, however, that plaintiff's deposit will be returned without any obligation on plaintiff's part if (for any reason) a formal contract is not agreed. If plaintiff had an absolute, unlimited right to withdraw from the agreement, plaintiff would have no obligation under the agreement and the alleged contract would therefore not be binding. *See, e.g., Lynx Exploration and Prod. Co., Inc. v. 4-Sight Operating Co., Inc.,* 891 S.W.2d 785, 787–788 (Tex.App.1995); *Baldwin v. New,* 736 S.W.2d 148, 150–151 (Tex.App.1987). Because the terms of the agreement are unclear whether plaintiff had an absolute right not to be bound by the terms of the contract, defendant has not

shown that it is entitled to summary judgment that the alleged contract is illusory.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion for Partial Summary Judgment* (Doc. # 135), filed May 1, 1995, should be and hereby is overruled as to the existence of a contract between TBI and plaintiff, and *Defendant Recoll Management Corporation's Motion for Summary Judgment* (Doc. # 126), filed May 1, 1995, should be and hereby is overruled as to the illusory nature of the alleged contract.