### AMERICAN MAPLAN CORPORATION, Plaintiff,

v.

### Peter HEILMAYR, Defendants.

### No. 00–2512–JWL.

United States District Court, D. Kansas.

Oct. 18, 2001.

---

Randall E. Hendricks, Matthew T. Geiger, Rouse Hendricks German May PC, Kansas City, MO, for plaintiff.

G. Gordon Atcheson, Blake & Uhlig, P.A., Kansas City, KS, Rod Tanner & Associates, P.C., Fort Worth, TX, for defendants.

## MEMORANDUM & ORDER

LUNGSTRUM, Chief Judge.

Defendant Peter Heilmayr is the former president of plaintiff American Maplan Corporation ("AMC"), a company engaged in the business of manufacturing and selling equipment and parts used in the business of plastic extrusion. Defendant currently is the president of Vinyl Extrusion Technologies, Inc. ("VET"), a company founded by defendant and also engaged in the business of manufacturing and selling equipment and parts used in the business of plastic extrusion. AMC seeks damages and equitable relief from defendant based upon defendant's alleged violation of a covenant not to compete, his alleged violation of a non-disclosure covenant and his alleged wrongful solicitation and diversion of AMC's customers.

This matter is presently before the court on defendant's motion for partial summary judgment (doc. # 39). Specifically, defendant moves for summary judgment on plaintiff's breach of contract claims. For the reasons set forth below, defendant's motion is denied with respect to plaintiff's claim for breach of the covenant not to compete and retained under advisement with respect to plaintiff's claim for breach of the non-disclosure covenant.

*Facts*

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. In October 1994, defendant and plaintiff entered into a written employment contract. The contract was for a five-year term, from January 1, 1994 through December 31, 1998. As the term of the contract was drawing to a close, defendant made numerous requests for a new contract to continue his employment relationship with plaintiff. Plaintiff either rejected or did not respond to defendant's requests to continue his em-

ployment with plaintiff. Defendant's employment contract, thus, expired on December 31, 1998.

The employment contract contains two sections that are particularly relevant to defendant's motion. The first section, Section IX, is a covenant not to compete. That section states, in its entirety, as follows:

> Employee agrees during the term of this Agreement and for a period of two (2) consecutive years immediately following the termination of this Agreement or his employment, whichever occurs later, and regardless of the cause of termination, he will not for himself or on behalf of any person, firm, partnership or corporation engage in the business of Employer and [sic] Employer's trade area. Said trade area being North America, South America, Central America and/or any island within a hundred miles thereof.
>
> Employee agrees that he will not directly or indirectly, for himself or on behalf or [sic] in conjunction with any other person, firm, partnership or corporation, solicit or attempt to solicit the business or patronage of any person, firm, partnership or corporation within Employer's trade area for the purpose of conducting business similar to Employers [sic]. Employee shall not perform such other incidental business or services as company now engages in.
>
> In the event that Employee is terminated and employer desires to prevent employee from seeking other employment, employer may in its sole discretion continue to pay Employee during the remaining term of this contract or for a period of two (2) years thereafter. In the event that employer shall elect not to make the payments as provided herein, then Employee shall be free to seek other employment.

It is undisputed that plaintiff has made no salary payments or other payments to defendant since the termination of the employment contract on December 31, 1998. The second pertinent section in the contract, Section X, is a non-disclosure covenant. The non-disclosure covenant prohibits defendant from using or disclosing plaintiff's "trade secrets" for a period of two years following his employment with plaintiff.

*Summary Judgment Standard*

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's

claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

*Breach of Covenant Not to Compete*

Plaintiff's first breach-of-contract claim is based on defendant's alleged violation of Section IX of his employment contract. Specifically, plaintiff contends that defendant, shortly after the expiration of his employment contract with plaintiff, began working for one of plaintiff's competitors and began contacting potential customers in plaintiff's trade area.

Defendant contends that plaintiff's claim is baseless as the third paragraph of Section IX unambiguously requires plaintiff to continue paying defendant's salary for two years as a "condition necessary to the enforcement of the covenant not to com-pete." According to defendant, it is undisputed that plaintiff did not pay defendant as required by Section IX and, thus, the covenant "never went into effect." Plaintiff agrees with defendant that the contract is unambiguous (and thus agrees that the court may determine the intent of the parties within the four corners of the documents without regard to extrinsic or parol evidence) but maintains that defendant's construction of the contract is incorrect. According to plaintiff, Section IX clearly and unambiguously permits plaintiff to enforce the covenant not to compete without any additional payments so long as the contract between the parties simply expires. In other words, according to plaintiff, defendant is entitled to additional payments under Section IX only if plaintiff, by its affirmative act, terminates plaintiff's employment (*i.e.,* if plaintiff fires defendant).

■■■ Under Kansas law,[1] the construction of a written contract is a matter of law for the court. *Wagnon v. Slawson Exploration Co.,* 255 Kan. 500, 511, 874 P.2d 659 (1994). The "cardinal rule of contract interpretation is that the court must ascertain the parties' intention and give effect to that intention when legal principles so allow." *Ryco Packaging Corp. v. Chapelle Int'l, Ltd.,* 23 Kan.App.2d 30, 36, 926 P.2d 669 (1996) (citing *Hollenbeck v. Household Bank,* 250 Kan. 747, 751, 829 P.2d 903 (1992)). Where a contract is complete and unambiguous on its face, the court must determine the parties' intent from the four corners of the document, without regard to extrinsic or parol evidence. *Simon v. National Farmers Org., Inc.,* 250 Kan. 676, 679–80, 829 P.2d 884 (1992).

■■■ As an element of contractual construction, whether an instrument is ambiguous is a question of law for the court. *Id.* A contract is ambiguous if it contains "pro-

---

**1.** The parties agree that Kansas law applies to this dispute.

visions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Id.* Contractual ambiguity appears only when "the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more possible meanings is the proper meaning." *Marquis v. State Farm Fire and Cas. Co.*, 265 Kan. 317, 324, 961 P.2d 1213 (1998). The court must not consider the disputed provision in isolation, but must instead construe the term in light of the contract as a whole, such that if construction of the contract in its entirety removes any perceived ambiguity, no ambiguity exists. *Arnold v. S.J.L. of Kansas Corp.*, 249 Kan. 746, 749, 822 P.2d 64 (1991).

■ Construing the three paragraphs of Section IX as a whole, the court agrees with both parties that the third paragraph concerning additional payments is unambiguous. The court further agrees with defendant (and expressly rejects plaintiff's argument to the contrary) that the third paragraph of Section IX operates regardless of whether the contract simply expires or plaintiff affirmatively discharges defendant.[2] At this point, however, the court's construction of the third paragraph of Section IX diverges significantly from defendant's proposed construction. Defendant's construction of the third paragraph renders that paragraph inconsistent with the first paragraph-a paragraph that clearly prohibits competition with plaintiff for a period of two years without regard to additional payments. The only way in which the third paragraph is consistent with the first paragraph (and, thus, the only way in which the third paragraph is unambiguous) is if the paragraph is read to require additional payments only when plaintiff desires to prevent defendant from working altogether. In other words, while the first and second paragraphs prohibit defendant from competing with plaintiff, the third paragraph prohibits defendant from working anywhere at all. Stated another way, the third paragraph applies only if plaintiff desires to prevent defendant from working at all-not just in competition with plaintiff. Thus, the third paragraph of Section IX, with its requirement of additional payments, is simply not applicable to this dispute. Summary judgment is therefore denied.

*Breach of Non–Disclosure Covenant*

Plaintiff's second breach-of-contract claim is based on defendant's alleged use of "trade secrets" after he left his employment with plaintiff in violation of Section X of his employment contract. Pursuant to that section, such trade secrets include plaintiff's internal pricing policies and the prices at which it has actually sold poly vinyl chloride (PVC) manufacturing equipment to its customers. According to defendant, the court may assume for purposes of analyzing his motion that he knew of plaintiff's pricing practices, that he imported that knowledge when he went to work for VET, and that plaintiff did not consent to any use of that information. Defendant contends that summary judgment is nonetheless warranted on this claim because plaintiff cannot demonstrate that it suffered any injury as a result of defendant's knowledge or disclosure of plaintiff's pricing practices. In response, plaintiff argues that summary judgment is inappropriate because a factual dispute exists on the issue of causation or, alternatively, because plaintiff is entitled to fur-

---

2. The problem with plaintiff's construction of the third paragraph is that the phrase "or for a period of two years thereafter" has no meaning unless the contract expires. Thus, the third paragraph clearly contemplates both situations-the expiration of the contract and the affirmative termination of plaintiff's employment.

ther discovery under Federal Rule of Civil Procedure 56(f). As set forth below, defendant's motion for summary judgment is denied and plaintiff's request for relief pursuant to Rule 56(f) is granted.

 It is well settled under Kansas law (and, indeed, general principles of contract law) that a party seeking to recover for a breach of contract must prove that the purported breach caused the claimed damages or injury. *See ORI, Inc. v. Lanewala,* 147 F.Supp.2d 1069, 1077–78 (D.Kan. 2001) (and cases cited therein). According to defendant, plaintiff cannot establish the causation element of its claim because plaintiff's pricing information is readily available to and freely disseminated among buyers and sellers of extrusion equipment and other machinery used to manufacture PVC products. In that regard, defendant's evidence suggests that a purchaser of such equipment commonly will disclose the offering price from one seller, such as plaintiff, to another seller, such as VET, to pit the two competitors against one another in an effort to drive down the price it will ultimately pay for the product. In short, defendant contends that the pricing information he obtained during his employment with plaintiff affords him no particular advantage with VET because his customers are only too happy to pass along plaintiff's prices and quotes to him.

In response, plaintiff urges that purchasers of extruders and other PVC manufacturing equipment generally do not disclose bid prices or quotes from one seller to other sellers.[3] Even assuming that is true, however, plaintiff still has not directed the court to any evidence that it has lost customers or sales to VET or, more importantly, that it has lost customers or sales to VET based on defendant's knowledge of or disclosure of plaintiff's pricing information.[4] In fact, the only piece of evidence offered by plaintiff in support of the causation element of its claim is a letter sent by defendant to Hans Groeblacher in March 1999. At the time, Mr. Groeblacher worked for Mikron, one of plaintiff's customers, as the Engineering Manager in charge of profile extrusion. In the letter, defendant solicits Mikron's business by advertising the availability of "all the Maplan designs." According to plaintiff, this letter alone raises a genuine issue of material fact sufficient to preclude the entry of summary judgment. As defendant highlights, however, plaintiff has come forward with no evidence suggesting that Mikron purchased any equipment from VET or, more particularly, that it did so because of some inside information defendant acquired while working for plaintiff. In the absence of such evidence, plaintiff cannot raise a factual dispute on the causation issue. *See ORI, Inc.,* 147 F.Supp.2d at 1079 (lack of evidence that former employer suffered damages as a result of former employee's solicitation of employees in breach of employment contract warrants the entry of summary judgment against party; admissible evidence demonstrated only that solicited employees declined offer).

---

3. In support of its assertion, plaintiff presents the affidavit of Norris Bohm, plaintiff's Chief Operating Officer. Defendant contends that the affidavit is insufficient to survive summary judgment because the averments contained therein are vague and conclusory. Because the court concludes that plaintiff has failed to demonstrate the existence of a factual dispute in any event, the court need not address defendant's argument concerning Mr. Bohm's affidavit.

4. Plaintiff suggests that the entry of summary judgment is somehow precluded because its claim is not limited to pricing information but includes other trade secrets. While this may be true, plaintiff still has not offered evidence that defendant's disclosure of any trade secrets-whether pricing information or otherwise-caused any injury to plaintiff.

Having failed to demonstrate the existence of a genuine issue of material fact regarding causation, the court turns to address plaintiff's argument that it needs additional discovery pursuant to Federal Rule of Civil Procedure 56(f). Rule 56(f) allows a court to stay or deny a summary judgment motion in order to permit further discovery if the nonmovant states by affidavit that it lacks facts necessary to oppose the motion. *Price v. Western Resources, Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). The general principle of Rule 56(f) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The protections of Rule 56(f), however, must be invoked and can be applied only if a party satisfies certain requirements. *Id.* (identifying prerequisites to granting relief pursuant to Rule 56(f)).

Consistent with the requirements of the Rule, plaintiff has submitted an affidavit in support of its request for relief and that affidavit explains why facts precluding summary judgment cannot be presented-namely, that VET and Theysohn Extruder[5] have exclusive control over documents and information necessary to establish a causal link between defendant's disclosure of trade secrets and damages to plaintiff. The affidavit also details the steps that have been taken to obtain the information. In that regard, plaintiff requested the VET documents from defendant on April 25, 2001. Defendant refused to produce those documents and plaintiff filed a motion to compel production. Magistrate Judge David Waxse granted plaintiff's motion to compel and ordered defendant to produce the VET documents. At the time plaintiff filed its response to defendant's motion for partial summary judgment, defendant had not complied with Judge Waxse's order. In the meantime, this court reversed Judge Waxse's order compelling production of the documents. *See American Maplan Corporation v. Heilmayr*, —— F.R.D. ——, 2001 WL 1160808 (D.Kan. Sept.19, 2001). Nonetheless, plaintiff has also attempted to obtain the documents directly from VET and Theysohn Extruder. According to plaintiff, VET has agreed to produce the requested documents but plaintiff has not yet received those documents. Plaintiff further asserts that Theysohn Extruder has refused to produce the requested documents and a motion to compel those documents is presently pending in the United States District Court for the Northern District of Texas.

Plaintiff, thus, has demonstrated that it has been delayed in obtaining documents that might prove to be critical in its opposition of defendant's motion. Plaintiff has further demonstrated that it has made reasonable efforts to obtain the information prior to responding to defendant's motion. The court also notes that, unlike most Rule 56(f) requests that are made after the close of discovery, the discovery period in this case has not yet closed. Finally, the Circuit has recognized that another party's exclusive control of necessary information is a factor weighing heavily in favor of relief under Rule 56(f). *See Price*, 232 F.3d at 783.[6] For these reasons, the court

---

**5.** VET sells the products of Theysohn Extruder-a primary competitor of plaintiff.

**6.** The court recognizes, of course, that VET is not a party in this litigation. Nonetheless, the fact that documents that may be critical to the causation element of plaintiff's claim are in the exclusive control of a non-party still weighs in favor of granting relief to plaintiff, particularly in light of defendant's relationship with VET.

grants plaintiff's request for relief under Rule 56(f) and retains under advisement defendant's motion for summary judgment on this claim. In that regard, plaintiff may file a supplemental responsive brief based on the additional discovery **no later than December 12, 2001.** Defendant may file a supplemental reply brief within the time period provided in D. Kan. Rule 6.1(e).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for partial summary judgment (doc. # 39) is **denied in part and retained under advisement in part.**