No. 70,276

KENNETH J. WAGNON, Individually and as Nominee for THOMAS R. DEVLIN and FRANK BARTON; THOMAS R. DEVLIN; W. FRANK BARTON; TIMOTHY E. MCKEE, Successor Trustee; and B. TAD PATTON, Successor Trustee, *Appellants*, v. SLAWSON EXPLORATION COMPANY, INC., and DONALD C. SLAWSON, *Appellees*.

(874 P.2d 659)

Opinion filed May 27, 1994.

*Eric B. Metz*, of Triplett, Woolf & Garretson, of Wichita, argued the cause and was on the briefs for appellants.

*David J. Morgan*, of Hershberger, Patterson, Jones & Roth, L.C., of Wichita, argued the cause, and *H.E. Jones* and *Marc P. Clements*, of the same firm, were with him on the brief for appellees.

*Charles N. Henson*, of Wright, Henson, Somers, Sebelius, Clark & Baker, of Topeka, was on the brief for *amicus curiae* The Kansas Bankers Association.

The opinion of the court was delivered by

ABBOTT, J.: The issue in this case is whether the plaintiffs are entitled to 18 percent interest or 24 percent interest on a debt.

The trial court granted summary judgment to the defendants, holding that K.S.A. 16-205 precludes a higher interest rate because of a nonmonetary default and, further, that the renewal note did not provide for the default interest rate in the event of a nonmonetary default. The court found the other issues concerning default raised by plaintiffs to be moot. Plaintiffs appeal and, at plaintiffs' request, the appeal was transferred to this court pursuant to K.S.A. 20-3017.

The plaintiffs are Kenneth J. Wagnon, Thomas R. Devlin, Frank Barton, and others. The defendants are Slawson Exploration Company, Inc., (SECI) and Donald C. Slawson.

In 1988, defendant SECI became indebted to plaintiffs in the amount of $2,000,000, due in full without interest on May 1, 1990. Plaintiffs were given a security interest in specific oil and gas properties as collateral. Defendant Donald Slawson personally guaranteed the loan.

Payment was not made by May 1, 1990, and the parties negotiated an extension agreement having an effective date of May 1, 1990. The extension agreement increased the amount to be paid to $2,515,000, required defendants to provide collateral with a fair market value in excess of $2,515,000, and set a schedule of payments with the total amount to be paid in full by December 1, 1990. The extension agreement provided for no interest except that delinquent payments would bear interest at 24 percent per annum until paid.

At the same time the extension agreement was entered into, the parties prepared a renewal note which would become effective if payment in full was not made by December 1, 1990. The renewal note amortized the indebtedness remaining of the $2,515,000 into 36 equal monthly payments beginning January 1, 1991, with interest on the principal and any unpaid interest at 18

percent per annum. The note also required defendants to provide collateral with a fair market value two times the unpaid principal balance and accrued interest. Further, the extension agreement required defendants, upon delivery of the renewal note, to obtain "immediately" and on a quarterly basis thereafter a petroleum engineering evaluation and appraisal of the collateral. Upon maturity or in the event of default, the interest rate would increase from 18 percent to 24 percent per annum.

The renewal note listed five events of default, including nonpayment, insolvency, a judgment against SECI or Slawson in excess of $1,000,000, or the following:

"2. Value of Collateral. The fair market value of the collateral securing this Note shall at all times be not less than two times the outstanding unpaid indebtedness under the Note(unpaid principal and accrued interest), plus all other amounts owing under the Agreement and any other loan documents;

. . . .

"4. Agreements. Material default in the performance of any of the SECI or Guarantor' [sic] obligations or agreements herein set forth or set forth in any other loan document . . . and continuance of such default for 30 days after notice thereof to SECI from The Investors."

Upon default, plaintiffs "shall have the right to declare the entire unpaid principal of, and all interest accrued on, the Note to be . . . forthwith due and payable."

Payment in full was not forthcoming, and the renewal note was delivered on December 1, 1990, with an outstanding indebtedness of $2,120,000. On December 10, 1990, plaintiffs declared defendants to be in default, alleging that the fair market value of the collateral was not two times the unpaid indebtedness. Plaintiffs accelerated the note and declared the entire unpaid balance, plus interest, immediately due and payable. Plaintiffs also provided written notice to defendants' counsel on January 11, 1991, that defendants had been in default since December 2, 1990, for failing to maintain collateral at the requisite value and that the default interest rate of 24 percent applied from the date of the default.

Plaintiffs instituted this action in the district court on March 22, 1991, alleging that defendants were in default by failing to

provide the requisite appraisal and by failing to maintain collateral with a fair market value two times the outstanding indebtedness. Plaintiffs alleged that the balance owed was $1,993,936.33 and sought to foreclose on the collateral and enforce the personal guaranty of Slawson.

On July 15, 1991, plaintiffs filed their first motion for partial summary judgment, seeking a determination that the term "fair market value" as used in the extension agreement and renewal note was unambiguous as a matter of law. Defendants likewise filed a motion for summary judgment on August 12, 1991, seeking a determination that, under the agreement and due to prior conduct of the parties, "fair market value" was the present value of future net revenues of the properties, discounted at 10 percent, that no default had occurred, and that defendants were entitled to judgment as a matter of law. The court denied both motions on September 6, 1991, in part as premature, holding that a question of fact as to the value of the properties existed.

On September 23, 1992, plaintiffs again filed a motion for summary judgment, seeking a determination of all claims in its favor. Plaintiffs contended that the term "fair market value" was unambiguous as a matter of law, that defendants had failed to provide collateral with a fair market value two times the outstanding indebtedness, and that the petroleum engineering reports defendants obtained did not constitute independent fair market value appraisals and thus did not comply with the requirements of the extension agreement and renewal note. Defendants filed a cross-motion for partial summary judgment on November 20, 1992, arguing that the default interest rate under the renewal note did not apply to a nonmonetary default and that K.S.A. 16-205 prohibited default interest in this case.

Before the district court ruled on the parties' motions for summary judgment, defendants tendered to the clerk of the court payment of the principal and interest owed on the obligation at the nondefault interest rate (18 percent). The trial court heard argument and determined on March 5, 1993, that the tender, though conditioned on the release of the collateral, constituted full payment. The journal entry states in part:

"1. Defendants made tender of payment of all outstanding principal and interest at the term rate of 18% on February 16, 1993, in that the irrevocable letter of credit was tantamount to a cash payment. The requirement of releases was not unreasonable in that the Court would have required releases if a cash payment had been made, and thus the requirement of releases does not prevent the irrevocable letter of credit from constituting tender of payment.

"2. Prior to February 16, 1993, Defendants have timely made all scheduled payments pursuant to the Renewal note. For this reason, the underlying debt has been fully extinguished.

"3. Default interest is unenforceable according to K.S.A. 16-205 and related case law. According to the Extension agreement and Renewal note, default interest does not apply to nonmonetary defaults. Since the underlying debt has been extinguished, all issues are rendered moot, except attorneys' fees and expenses under paragraph 6 of the Extension agreement.

"4. The Court further finds that except for the amount of attorneys' fees and expenses Defendants owe Plaintiffs under paragraph 6 of the Extension agreement, all other issues herein, including but not limited to insufficiency of collateral, are hereby moot."

Plaintiffs do not contest the district court's determination that defendants' tender on February 16, 1993, constituted payment of the principal and interest at the nondefault interest rate of 18 percent. However, plaintiffs appeal the court's determination prohibiting the default interest rate of 24 percent in this case. Plaintiffs also appeal the district court's denial of their second summary judgment motion.

## I. DEFAULT INTEREST

Plaintiffs notified defendants on December 10, 1990, that they were in default for having insufficient collateral, which was to be two times the outstanding indebtedness. Plaintiffs' complaint filed in the district court March 22, 1991, alleged default by failing to maintain sufficient collateral and by failing to provide the required appraisal.

The district court gave two reasons for disallowing default interest after defendants tendered full payment of the indebtedness at the nondefault interest rate: First, K.S.A. 16-205 precludes a higher rate of interest upon a nonmonetary default; and second, the extension agreement and renewal note did not provide for the higher rate of interest for a nonmonetary default.

Before addressing this issue, defendants maintain that the issue is not properly before this court. They contend the trial court determined that full payment of the note rendered all other issues moot and that, because full payment at the nondefault interest rate was tendered, the disallowance of default interest was one of the issues rendered moot. Therefore, assert the defendants, the plaintiffs have not appealed the trial court's determination of mootness, and the appeal as to the default interest question is barred. This argument is untenable. The district court's finding that the issue of default was moot was premised on its finding that defendants had tendered payment in full. However, the tendered payment was in full only if the default interest rate did not apply. If the default rate was enforceable, and if a default did occur, then defendants' tender of payment in February 1993 did not constitute payment in full, and the other issues were not rendered moot by defendants' tender.

Defendants also suggest, relying on principles of equity, that default interest in the case of a nonmonetary default can only be assessed from the date a court determines that a default occurred, rather than from the date of the default itself. However, they cite no support for this contention. This argument, too, is untenable. If a default interest rate is permissible for a nonmonetary default and if the date of default is determinable, that interest may accrue from the date the default occurred, not merely from the date a court determines that default occurred.

Plaintiffs argue that the district court's interpretation of K.S.A. 16-205 was erroneous. In pertinent part, K.S.A. 16-205 provides:

"(a) When a rate of interest or charges is specified in any contract, that rate shall continue until full payment is made, and any judgment rendered on any such contract shall bear the same rate of interest or charges mentioned in the contract, which rate shall be specified in the judgment; but in no case shall such rate or charges exceed the maximum rate or amount authorized by law, and *any bond, note, bill, or other contract for the payment of money, which in effect provides that any interest or charges or any higher rate of interest or charges shall accrue as a penalty for any default, shall be void as to any such provision.*" (Emphasis added.)

There have been no substantive changes to 16-205(a) since the predecessor to this statute was enacted in 1889.

Plaintiffs cite four primary cases: *Robbins v. Maddy*, 95 Kan. 219, 147 Pac. 826 (1915); *Investment Co. v. Brown*, 89 Kan. 66, 130 Pac. 665 (1913); *Holmes v. Dewey*, 66 Kan. 441, 71 Pac. 836 (1903); and *Sheldon v. Pruessner*, 52 Kan. 579, 35 Pac. 201 (1894), to support the principle that a higher interest rate which is prospective upon default and not retroactive does not constitute a "penalty" under what is now K.S.A. 16-205(a).

In *Holmes*, 66 Kan. 441, a promissory note provided for a 6 percent interest rate from the date of the note until payment was due and for a 12 percent interest rate after the note was due. This court reduced the 12 percent interest rate to 10 percent, the maximum rate then allowable by law, and enforced the 10 percent rate after the note was due. Noting that in *Sheldon*, 52 Kan. at 592, this court held that "[w]here there is an express stipulation that a certain rate of interest shall run after maturity, interest at that rate is recoverable," we stated:

"We regard the sum of ten per cent. interest to be paid after maturity as a contract rate. A rate was agreed on, both before and after maturity. The excess in the amount of interest the note was to draw after maturity over the amount it drew up to that time did not relate back to the date of the paper. Had it done so, the excess rate would be regarded in law as a penalty. [Citations omitted.]

"We think section 3594, General Statutes of 1901 [now K.S.A. 16-205(a)] was intended to relieve the maker from a penalty of an excess rate running back to the date of the paper. [Citation omitted.]" *Holmes*, 66 Kan. at 442.

A like result was reached in *Robbins*, 95 Kan. 219, where the issue of interest after maturity again arose. The notes there provided: "If not paid when due, this note to draw interest at the rate of ten per cent per annum from its date until paid." 95 Kan. at 220. The mortgage made when the notes were executed provided for 10 percent interest per annum upon maturity, but also "if not paid when due to draw 10% per annum from date." 95 Kan. at 220. The plaintiff sought interest on the notes after maturity but not "from date." This court noted that "[t]he promise in the notes to pay an excess rate from date because the notes were not paid at maturity is void under the statute quoted [now K.S.A. 16-205(a)], and so much of it as may be regarded as a

penalty is not recoverable. [Citations omitted.]" 95 Kan. at 221. The issue then was what rate of interest applied after maturity.

"It is competent for parties to provide for a legal rate of interest on a note until maturity, and for a higher legal rate after maturity in the event that it is not paid at that time. (*Holmes v. Dewey*, supra.) The penalty feature of the notes in question is in requiring excess payment because of a default. The default occurred upon the failure to pay the notes at maturity. The invalid excess is that provided for between date and maturity. . . . When the maker expressly stipulates that a higher rate of interest shall be paid after maturity, interest at that rate is recoverable if it is not in contravention of the usury law." 95 Kan. at 221.

Thus, interest was recoverable at the rate of 10 percent after maturity.

*Investment Co.*, 89 Kan. 66, is also on point, although it does not specifically discuss what is now K.S.A. 16-205(a). Rather than merely involving higher interest after maturity, the issue included higher interest upon monetary default. A promissory note for $12,000 was due February 1, 1910, and seven interest payments of $780 (a rate of 6.5 percent per annum) were due annually from February 1, 1904, to February 1, 1910. The note provided for interest of 10 percent per annum "after due or after default of any interest payment," and the accompanying mortgage provided for acceleration of the principal note at an interest rate of 10 percent upon nonpayment of any interest payment when due. 89 Kan. at 67. The fourth and fifth required annual interest payments were not made, and the appellee sought payment on the principal note and on the accrued as well as future interest notes. This court allowed acceleration of the principal note and interest on the accrued interest notes, but disallowed recovery or interest on the future interest notes.

"[T]he parties had a right to contract for any rate of interest which did not exceed ten per cent [the maximum then allowable by law]. They also had a right to contract that the coupon notes should draw interest at the rate of ten per cent per annum after maturity; also, to contract that upon the nonpayment of any interest coupon the whole indebtedness should become due. This, of course, would include the principal debt and the interest then due. Upon the maturity and nonpayment of interest coupon No. 4, February 1, 1907, the amount thereof and the principal note, $12,780, became due, and thereafter, by the terms of the contract, bore interest at the rate of ten per cent per annum; but subse-

quently maturing interest coupons should thereafter be ignored as the principal note then bore the highest rate of interest recoverable. The principal then to bear interest from February 1, 1907, at ten per cent was $12,780." 89 Kan. at 68.

Thus, an increased interest rate was permitted, effective from the date of the first missed payment.

These cases establish that a higher rate of interest does not constitute a penalty when the rate is prospective from the date of default. The rationale of these cases is persuasive: What is now K.S.A. 16-205(a) "was intended to relieve the maker from a penalty of an excess rate running back to the date of the paper." *Holmes*, 66 Kan. at 442. A higher interest rate which applies only from the date of default forward is not a penalty prohibited by K.S.A. 16-205(a).

Defendants attempt to distinguish the cases discussed above by suggesting that those cases apply only to monetary default. (They do not, however, suggest that these cases were incorrectly decided in relation to instances of monetary default.) They contend that default interest constitutes a penalty when it is assessed for a nonmonetary default because the lender assumes no additional economic risk or loss, and therefore it is prohibited by K.S.A. 16-205. We disagree. The lender may assume an additional economic risk in the event of a nonmonetary default. Take, for example, a situation where collateral for a note falls below the requisite value, as is alleged here. Should the debtor later fall behind on payments even though presently current on payments, the lender must have sufficient collateral to protect its investment, not only to cover the outstanding indebtedness, but also to cover the fees and expenses incurred in foreclosing on the collateral upon the debtor's default. Indeed, this is the basic purpose of requiring the debtor to put up collateral for a loan: The collateral is required in anticipation of the possibility, however unlikely, that the debtor will fail to make payment on the loan. Insufficient collateral, even when the debtor is current on payments, does create an economic risk for the lender.

Defendants also assert that "Kansas courts have not allowed default interest when the debtor is current with payments and

the only allegation of default is based on subjective nonmonetary defaults." In fact, neither have Kansas courts disallowed default interest in such circumstances. The issue has simply not arisen in the appellate courts of Kansas. The fact that no appellate court has permitted default interest upon a nonmonetary default, when the issue has never been addressed, does not translate into a rule disallowing default interest upon a nonmonetary default when the debtor is current with payments.

Further, defendants suggest that plaintiffs are attempting to obtain default interest retroactively to the date of the note. This suggestion is inaccurate. Plaintiffs are merely seeking default interest retroactively to the date of the default. It is coincidental that the date of the default may be the date the note became effective in this case. Defendants' suggestion that the alleged default here is a subjective, rather than objective, default is equally incorrect. If a default occurred, the fact of the default and the date of the default may objectively be determined by the district court.

While a default interest rate in the event of a nonmonetary default may appear more like a penalty than it does in the event of a monetary default, the cases cited above clearly establish that a default interest rate prospective from the date of default is not a penalty. Those cases do not distinguish between monetary and nonmonetary default. If a nonmonetary default is material and sufficient to invoke an acceleration clause, then a default interest rate in such event does not constitute a penalty.

Where parties freely contract for a higher interest rate upon the occurrence of a default, whether monetary or nonmonetary, and that higher interest rate is not otherwise illegal and is prospective from the date of default and not retroactive, it does not constitute a penalty regardless of the type of default, and it is not prohibited by K.S.A. 16-205(a). The district court's finding that K.S.A. 16-205(a) precludes application of a higher rate of interest upon default in this case was incorrect. K.S.A. 16-205(a) only prohibits a higher interest rate when it constitutes a penalty for default. A prospective increase in the interest rate, for which the parties have freely contracted as a consequence of monetary or

nonmonetary default, does not constitute a penalty prohibited by K.S.A. 16-205(a).

## II. TERMS OF AGREEMENT AND NOTE

Defendants suggest, and the district court found, that the terms of the renewal note and extension agreement do not provide for default interest upon a nonmonetary default. Defendants rely on the language of the default provision, which increases the interest rate of 18 percent "after maturity or upon the occurrence of an Event of Default *until paid* at 24% per annum." (Emphasis added.) Defendants contend that the phrase "until paid" indicates that it applies only to a monetary default. They give two reasons for their position. First, they posit that "until paid" means that the higher interest rate only applies until they cure the monetary default by becoming current in payments. Because the renewal note does not make provision for defendants to cure a nonmonetary default, the default interest rate does not apply to a nonmonetary default. Second, defendants assert that the extension agreement provided for a higher interest rate only for delinquent payments until paid. Because the renewal note was executed as a part of the extension agreement, the instance in which the default interest rate applies must be consistent between the documents.

Defendants ignore the clear and unambiguous language of the renewal note. The note lists five events of default, and it provides default interest "upon the occurrence of an Event of Default." This provision does not limit default interest to only certain monetary events of default. It is applicable in *any* event of default. Defendants' construction of the note would read out this language.

We also disagree with defendants' second argument, that reading the renewal note in conjunction with the extension agreement reveals that the default interest rate applies only in the·event of a monetary default. The clear and unambiguous language·of the renewal note applies the default interest rate to all events of default, and this language cannot be ignored.

The rules of contract construction have been frequently·stated:

" 'The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court.' *Akandas, Inc. v. Klippel*, 250 Kan. 458, Syl. ¶ 1, 827 P.2d 37 (1992).

" 'In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms.' *Darby v. Keeran*, 211 Kan. 133, Syl. ¶ 2, 505 P.2d 710 (1973)." *Barnett v. Oliver*, 18 Kan. App. 2d 672, 685, 858 P.2d 1228 (1993).

"One of the most basic and fundamental rules of contract construction is that a contract which is plain and unambiguous on its face must be enforced according to its own terms. *Quenzer v. Quenzer*, 225 Kan. 83, 85, 587 P.2d 880 (1978)." *Home Life Ins. Co. v. Clay*, 13 Kan. App. 2d 435, 448, 773 P.2d 666, *rev. denied* 245 Kan. 783 (1989). "Where a contract is found to be unambiguous, the written agreement determines the rights of the parties." *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, Syl. ¶ 6, 777 P.2d 1259 (1989), *cert. denied* 493 U.S. 1036 (1990). The renewal note here is not ambiguous, and therefore its terms must be enforced. The terms of the renewal note apply the default interest rate to any event of default, not merely to a monetary event of default. The district court erred in holding otherwise.

## III. SUMMARY JUDGMENT

Plaintiffs ask this court to reverse the district court's order denying their second motion for summary judgment. However, the district court did not rule on the merits of plaintiffs' motion. Rather, the district court denied plaintiffs' motion because, after holding that the default interest rate was unenforceable, the question of whether a default occurred was moot. This is a court of review. Here, there is no decision of the district court to review.

Plaintiffs argue that this court is in as good a position as the trial court to determine this issue, as it involves only questions of law. The main issue presented by plaintiffs' motion concerns the meaning of the phrase "fair market value." Other issues in the summary judgment motion include whether in fact a default occurred because defendants failed to maintain collateral with a fair market value two times the outstanding indebtedness or failed

to obtain the requisite appraisal from an independent petroleum engineer. We disagree that this court is in as good a position as the district court to address the issues presented in plaintiffs' motion.

Judge Duckworth was involved in this case throughout its two-and-a-half year history in the district court. He ruled on plaintiffs' first motion for summary judgment, holding that questions of fact existed. The central issue in that motion was the definition of "fair market value." While additional discovery has taken place, thus possibly resolving questions of fact, it is apparent that the district court is in a much better position than this court to review the material submitted in support of the summary judgment motion. We remand the case to the district court for consideration of the merits of plaintiffs' motion for summary judgment or for trial.

Reversed and remanded for further proceedings.